Dissent by Judge BERZON
OPINION
GRABER, Circuit Judge:
Plaintiff N.E. is a child with a disability who, in accordance with the Individuals with Disabilities Education Act (“IDEA”), has received a series of Individualized Education Programs (“IEP”). In May 2015, three-and-a-half weeks before the 2014-15 school year ended, the Bellevue School District produced an IEP for N.E. that encompassed two stages: The first stage would begin immediately and the second would begin at the start of the 2015-16 school year. N.E.’s parents, Plaintiffs C.E. and P.E., allowed their son to finish the school year in accordance with the first stage of the IEP but did not agree to the second stage. Over the summer, the family moved to Seattle. Just before the start of the 2015-16 school year, Defendant Seattle School District proposed a class setting for N.E. that was similar to the second stage of the May 2015 IEP. Plaintiffs objected and sought a “stay-put” placement.
The pivotal issue is what “educational placement” was “then-current,” 20 U.S.C. § 1415(j), after N.E.’s family moved to Seattle in the summer of 2015 but before the 2015-16 school year began. Plaintiffs contend that the “then-current educational placement” must be the educational setting in which N.E. was enrolled either before his May 2015 IEP or, in the alternative, during the first stage of the May 2015 IEP. Defendant counters that the “then-current educational placement” for the 2015-16 school year is the setting described in the second stage of the May 2015 IEP. We agree with Defendant and, accordingly, affirm the district court’s denial of injunctive relief.
The relevant facts in this case are not disputed. N.E. was in the third grade at Newport Heights Elementary School in the Bellevue School District for most of the 2014-15 school year. Until the final month of that school year, and in prior school years, N.E. spent most of his instructional time in general education classes. His most recent IEP reflecting that arrangement dates from December 2014.
During the 2014-15 school year, Belle-vue School District officials reported that N.E. exhibited very serious behavioral problems on a regular basis. As a result, the school district began to consider changes. An IEP meeting occurred on May 26, 2015, at which Bellevue School District officials proposed a new IEP that placed N.E. in a self-contained, special education class for students with behavioral and emotional disorders (“self-contained class”). Plaintiffs objected to that proposal and wrote “disagree” on the front sheet of the proposed IEP. Bellevue officials and Plaintiffs also discussed where to place N.E. for the remainder of the school year. Bellevue and Plaintiffs agreed that N.E. would finish the final few weeks of the 2014-15 school year at a different school. At that school, he would spend most of the day in a one-on-two educational setting with a teacher and a paraeducator, but with no other students (“individual class”).
One day later, on May 27, 2015, the Bellevue School District produced the May 2015 IEP. The IEP incorporated two stages: During stage one, N.E. would finish the end of the 2014-15 school year in the agreed-upon individual class; during stage two, for the 2015-16 school year and *1095 beginning on September 1, 2015, N.E. would be placed in a self-contained class. Plaintiffs received that IEP approximately one week later, along with a prior written notice[1] notifying Plaintiffs that the Belle-vue School District intended to alter N.E.’s educational placement and that the individual class would serve as a transition to the self-contained class. Plaintiffs did not file an administrative due process challenge to the May . 2015 IEP and, instead, allowed N.E. to attend the individual class until the end of the school year on June 22, 2015.
Plaintiffs moved to Seattle in the summer of 2015 and contacted the Seattle School District to enroll N.E. Plaintiffs requested an individual class setting similar to the one in which N.E. had completed the prior school year.[2] The school district, however, reviewed N.E.’s records and proposed placing him in a self-contained class similar to the one embodied in stage two of the May 2015 IEP. Plaintiffs objected on September 9, 2015, and filed an administrative due process challenge. Plaintiffs also filed a “stay-put” motion, pursuant to 20 U.S.C. § 1415(j), arguing that N.E.’s stay-put placement was the general education class described in the December 2014 IEP. Defendant resisted the stay-put motion and argued that the self-contained class described in the May 2015 IEP was N.E.’s stay-put placement,[3]
An administrative law judge agreed with Defendant and determined that the self-contained class was.N.E.’s stay-put placement. Plaintiffs appealed that decision and filed a motion with the district court seeking a temporary restraining order and a preliminary injunction. The motion sought an order requiring Defendant to place N.E. in a general education class pending the outcome of the due process challenge. The district court denied Plaintiffs’ motion on the ground that they had not established a likelihood of success on the merits. Plaintiffs timely appeal.
We review the denial of a preliminary injunction for abuse of discretion. Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc., 204 F.3d 867, 874 (9th Cir. 2000). But we review legal questions, *1096 such as the meaning of a statute, de novo. Brookfield Commc’ns, Inc. v. W. Coast Entm’t Corp., 174 F.3d 1036, 1046 (9th Cir. 1999).
The pertinent portion of the IDEA provides:
[D]uring the pendency of any proceedings conducted pursuant to this section, unless the State or- .local, educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child....
20 U.S.C. § 1415(j) (emphasis added). The IDEA does not define “then-current educational placement.” The reading most consistent with the ordinary meaning of the phrase suggests that the “then-current educational ■ placement” refers to the educational setting in which the student is actually enrolled at the time the parents request a due process hearing to challenge a proposed change in the child’s educational placement. But two conceptual difficulties complicate the analysis. First, during the hiatus between school years, it is artificial to refer to remaining in a then-current placement; literally, there is none. Second, when an IEP contains two Stages, determining the “then-current educational placement” requires one to look either backward or forward.[4] Here is a graphic representation of the situation: .
[[Image here]]
Our caselaw assists us in resolving the conundrum. We have defined “educational placement” as “the general educational program of the student.” N.D. v. Haw. Dep’t of Educ., 600 F.3d 1104, 1116 (9th Cir. 2010). More specifically, we have, in a series of cases, “interpreted ‘current educational placement’ to mean ‘the placement set forth in the child’s last implemented IEP.’” K.D. ex rel. C.L. v. Dep’t of Educ., 665 F.3d 1110, 1117-18 (9th Cir. 2011); N.D., 600 F.3d at 1114; L.M. v. Capistrano Unified Sch. Dist., 556 F.3d 900, 911 (9th Cir. 2009); Johnson ex rel. Johnson v. Special Educ. Hearing Office, 287 F.3d 1176, 1180 (9th Cir. 2002) (per curiam). Although the statute refers to “educational placement,” not to “IEP,” the purpose of an IEP is to embody the services and educational placement or placements that are planned for the child. See Timothy O. v. Paso Robles Unified Sch. Dist. 822 F.3d *1097 1105, 1111-12 (9th Cir. 2016) (describing the creation and elements of an IEP).
That rule does not fully resolve the dispute here, though, because the parties disagree about the status of N.E.’s “then-current educational placement.” Plaintiffs contend that a multi-stage IEP should be viewed as containing several, discrete “educational placements” and that any unrealized stage within such an IEP should be seen as an unimplemented “educational placement” that cannot serve as the stay-put placement. Thus, Plaintiffs argue, because stage two of the May 2015 IEP was never implemented,, it cannot .be considered the “then-current educational placement.” That conclusion, according to Plaintiffs, leaves only two options as .permissible stay-put placements: the individual class setting described in stage one of the May 2015 IEP or. the general education setting that preceded the May 2015 IEP. Because the individual class setting was considered short-term at the time the parties created the May 2015 IEP, Plaintiffs claim that the earlier general education setting is the most appropriate stay-put placement. Defendant counters that the May 2015 IEP, as a whole, was N.E.’s “then-current educational placement” and that no legal authority precludes a multi-stage IEP or an IEP that spans a summer break.
We agree with Defendant that a partially implemented, multi-stage IEP, as a whole, is a student’s. then-current educational placement. A multi-stage IEP could be structured as several distinct IEPs, but it need not be. For example, some of our past cases assume that a single. IEP may contain several phases. See, e.g., T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist., 806 F.3d 451, 462-63 (9th Cir. 2015) (describing a procedural defect in a multi-stage IEP, but not criticizing the IEP for having several stages), cert. denied, - U.S. -, 136 S.Ct. 1679, 194 L.Ed.2d 769 (2016). Plaintiffs’ reading of the statute would allow students and their families to challenge the second half of any two-stage IEP when the transition occurs during a school break and would permit repeated challenges at every stage of a multi-stage IEP. We do not think that Congress intended that result.
Additionally, by the time N.E.’s parents filed their due process challenge, the second stage of the May 2015 IEP had already been scheduled to start. As noted, the May 2015 IEP provided that stage two—the self-contained placement—would begin on September 1, 2015, while N.E.’s parents did not request a due process hearing until September 9, 2015. Under Plaintiffs’ view, parents who disagree with a new IEP could wait until it is scheduled to take effect, pull their child out of school, and then request a due process hearing after the effective date of the new IEP. The new IEP would not be.“implemented” because the child is not physically present in the new setting. By this logic, the parents could then avail themselves of the stay-put mechanism to enforce the terms of a preferred old IEP during the course of the new school year while their due process challenge is litigated. Once again, we do not think that Congress intended such a result because it would undermine the cooperative process envisioned by the IDEA.
We do not suggest that Plaintiffs’ request for a due process hearing was untimely; the issue here does not pertain to a statute of limitations. Rather, the question simply is how to identify the status quo when a timely challenge occurs. For example, had a one-stage IEP been completed on August 31, for a single year, had N.E. begun school on September 1, and had his parents brought their challenge a week later, the challenge plainly would have *1098 been timely; but, just as plainly, the “stay-put” placement would have been the current (as of September 1) placement.
In short, the December 2014 IEP was superseded. The May 2015 IEP encompassed both the individual class and the self-contained class stages. Plaintiffs did not challenge the May 2015 IEP despite having had months to do so before the scheduled implementation of its second phase in September 2015.[5] The May 2015 IEP had already been implemented (and the scheduled start date for stage two had already passed) by the time Plaintiffs requested a due process hearing and, thus, was N.E.’s “then-current educational placement.”
The remaining question is whether the fact that the hearing request occurred during the summer—before N.E. physically enrolled in a self-contained class like the one described in stage two of the May 2015 IEP—forces us to view stage one as the stay-put placement. We think not, for two reasons. First, and more importantly, the IEP was implemented, and stage two was always the intended setting in which N.E. would begin the 2015-16 school year, effective September 1 (before N.E.’s parents requested a due process hearing). Second, we commonly think of education as forward-looking; we refer to a child who has completed fourth grade and is about to enter fifth grade as a “rising fifth grader.” The status quo at the time of the hearing request was the anticipated entry into the self-contained program. Stage two of the May 2015 IEP, therefore, was N.E.’s stay-put placement.
AFFIRMED.

. Pursuant to the procedural requirements of the IDEA, school districts must provide parents with "[w]ritten prior notice ... whenever the local educational agency proposes to initiate or change or refuses to initiate or change ... the identification, evaluation, or educational placement of the child.” 20 U.S.C. § 1415(b)(3)(A).
In addition to making the arguments discussed in text, Plaintiffs argue that Bellevue School District committed a procedural error, in violation of the IDEA, by sending the written notice after the school district had already implemented stage one of the May 2015 IEP. They argue that this error prevents the May 2015 IEP from serving as the stay-put placement. But that argument was waived; Plaintiffs raised it only in a motion for reconsideration, which does not suffice to preserve the issue for appeal. Hendricks & Lewis PLLC v. Clinton, 766 F.3d 991, 998 (9th Cir. 2014).

. The dissent argues that a general education class with full-time paraeducator support (the December 2014 IEP) should be considered N.E.’s stay-put placement, and it dismisses the individual class (stage one of the May 2015 IEP) as ‘‘understood by all concerned as temporary or interim,” and "not reflecting] any considered judgment, at any point, that the temporary placement is suitable for the long-term educational development of the child.” Dissent at 1103-04. But N.E.’s parents, citing the recommendations of two psychologists, requested an individual class setting when they first contacted the Seattle School District. In other words, Plaintiffs initially sought a more isolated, not a less isolated, environment for N.E. Had the Seattle School District acceded immediately to Plaintiffs’ wishes, N.E. would not have been placed in a general education class.

.Plaintiffs do not argue that Defendant’s proposal differed meaningfully from the second stage of the May 2015 IEP.

. It is our view that the change of school districts, in this case, does not affect the analysis.

. We cannot fault Plaintiffs for not having objected to stage one before allowing N.E. to attend the individual class for the last few weeks of the 2014-15 school year. But we view as critical the fact that Plaintiffs never challenged the May 2015 IEP at any point before the new school year was set to begin. Had Plaintiffs done so, they likely would have been entitled to a stay-put order under the terms of the December 2014 IEP that they could have presented to the Seattle School District upon transferring there.