**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| S.C. by her mother and next friend, K.G., | No. 21-35242 |
| *Plaintiff-Appellant*, | D.C. No. 6:20-cv-02277-MC |
| v. | |
| LINCOLN COUNTY SCHOOL DISTRICT, *Defendant-Appellee*. | OPINION |

Appeal from the United States District Court
for the District of Oregon
Michael McShane, District Judge, Presiding

Argued and Submitted August 31, 2021
Seattle, Washington

Filed October 18, 2021

Before: A. Wallace Tashima and Ronald M. Gould, Circuit Judges, and Jed S. Rakoff,[*] District Judge.

Opinion by Judge Rakoff

---

[*] The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

**SUMMARY**[**]

**Individuals with Disabilities Education Act**

The panel reversed the district court's denial of a student's parent's request for a "stay put" order under the Individuals with Disabilities Education Act and remanded for entry of a stay put order requiring the student's placement at an educational center at the expense of the defendant school district.

In due process proceedings, an administrative law judge concluded that the school district had failed to provide the student, who has Prader-Willi Syndrome, with a free appropriate public education because she required "total food security" in a schoolwide environment to obtain a meaningful educational benefit at school. As a remedy, the ALJ ordered the student's placement at the educational center, which treats students with Prader-Willi Syndrome and provides total food security in the overall school environment, at the school district's expense. After the school district failed either to appeal or to comply with the ALJ's order, the student's parent sought a stay put order in the district court. The district court denied a stay put order or preliminary injunction on the ground that the parent needed to challenge in further administrative proceedings a September 2020 individualized education program ("IEP") not covered by the ALJ's decision.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The IDEA's stay put provision provides that while an administrative appeal or civil action filed by a "party aggrieved" by an ALJ's decision is ongoing, the student must remain in her then-current educational placement. The panel held that a "party aggrieved" under 20 U.S.C. § 1415(i)(2)(A) includes a parent, like the parent here, who is aggrieved by a school district's failure to either appeal or comply with a final administrative order and who seeks court enforcement of that final administrative order. Accordingly, the parent properly sought relief in the district court.

The panel held that the district court incorrectly interpreted the ALJ order as providing two alternative simultaneous remedies, rather than an immediate transfer to the educational center, where the student was to remain, at the school district's expense, until the ALJ determined that a new IEP addressed all the perceived inadequacies in her prior setting.

The panel held that the district court also erred by failing to engage in an analysis of stay put and how the ALJ order changed the student's placement. The panel held that under the appropriate analysis, the ALJ order changed the student's legal placement to the educational center. Accordingly, under the IDEA's stay put provision, this new placement must be made and maintained. The panel held that because a stay put order functions as an automatic injunction, consideration of irreparable harm or other traditional preliminary injunction factors was not necessary.

**COUNSEL**

Suzanne M. Gall (argued), Suzanne M. Gall LLC, Portland, Oregon; Alice K. Nelson, Nelson Koster, Tampa, Florida; Andrée Larose, Morrison Sherwood Wilson Deola PLLP, Helena, Montana; for Plaintiff-Appellant.

Nancy J. Hungerford (argued) and Richard G. Cohn-Lee, Hungerford Law Firm, Oregon City, Oregon, for Defendant-Appellee.

Ellen Marjorie Saideman (argued), Law Office of Ellen Saideman, Barrington, Rhode Island; Selene Almazan-Altobelli, Council of Parent Attorneys and Advocates, Inc., Towson, Maryland; for Amicus Curiae Council of Parent Attorneys and Advocates, Inc.

**OPINION**

RAKOFF, District Judge:

This case asks us to consider the application of the so-called "stay put" provision of the Individuals with Disabilities in Education Act ("IDEA"). In this case, an administrative law judge, after considering a due process challenge to the educational program of a child with disabilities, ordered that the child ("S.C.") be placed at an educational center (the "Latham Center") at the expense of the Lincoln County School District (the "school district"). Although the school district never appealed the order, it failed to comply with the order. The child, by her mother ("K.G."), therefore sought a stay put order from a federal district court requiring that S.C. be placed at the Latham Center at the school district's expense; but the district court

denied the request. This was error, and, accordingly, we reverse and direct entry of the stay put order.

## BACKGROUND

## I.  The IDEA's Procedural Safeguards

The IDEA allocates federal funds to states on the condition, among others, that the state provide all children with disabilities a "free appropriate public education" ("FAPE"). 20 U.S.C. § 1412(a)(1)(A). A school district provides a FAPE to a child with disabilities by devising an individualized education program ("IEP") for each such child. An IEP is a document that identifies the child's particular educational needs, outlines the services required to meet those needs, and sets measurable goals for the child's progress. 20 U.S.C. § 1414(d)(1)(A). In any given case, the IEP is developed and regularly updated by the IEP "team," which involves the child's parent or guardian, a regular education teacher, a special education teacher, a representative of the local educational agency, and an expert regarding the child. 20 U.S.C. § 1414(d).

In addition to setting out requirements for IEPs, the IDEA provides specific procedural safeguards in relation to a school district's provision of a FAPE. 20 U.S.C. § 1415(a). If a parent is not satisfied with an IEP or has another complaint about the school district's provision of the FAPE, the parent can initiate an administrative due process challenge. In Oregon (where S.C. is located), the challenge proceeds before an administrative law judge ("ALJ"), who reviews the complaint, conducts a hearing, and can exercise broad authority to order appropriate remedies, including education services to be paid for by the school district. *See* 20 U.S.C. § 1415(i)(2)(C)(iii). The ALJ's decision is final

and binding unless either party appeals. 20 U.S.C. § 1415(i)(1)(A).

In addition to any administrative appeal, "[a]ny party aggrieved" by the ALJ's findings and order "shall have the right to bring a civil action" with respect to the due process complaint in an appropriate state court or federal district court. 20 U.S.C. § 1415(i)(2)(A). However, while any such proceeding is ongoing, the IDEA includes a requirement that the child remain in their then-current educational placement—a requirement known as the "stay put" provision. 20 U.S.C. § 1415(j) ("[D]uring the pendency of any proceedings conducted pursuant to [§ 1415], unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child . . . ."). As discussed below, however, Department of Education regulations deem an ALJ order to change placement, if not appealed by the parent or local educational agency, as a *de facto* agreement to treat the situs of the court-ordered placement as the "then-current" placement. *See* 34 C.F.R. § 300.518(d).

Stay put functions as "an 'automatic' preliminary injunction," and the moving party need not show the traditionally required preliminary injunction factors to obtain relief. *See Joshua A. v. Rocklin Unified Sch. Dist.*, 559 F.3d 1036, 1037 (9th Cir. 2009) (internal citations omitted). And while stay put most commonly involves maintaining the status quo, where a parent prevails in an administrative hearing and an administrative ruling agrees with the parent that a different placement is appropriate, then, as noted, it is that new placement that must be made and maintained for purposes of the stay put provision. *See Burlington v. Mass. Dep't of Educ.*, 471 U.S. 359, 372–73 (1985) (noting that a decision in the parent's favor in an

administrative due process hearing, if not appealed, "would seem to constitute agreement by the State to the change of placement"); 34 C.F.R. § 300.518(d) (codifying *Burlington* that "[i]f the hearing officer in a due process hearing . . . agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State and the parents for purposes of [stay put]").

## II.  S.C.'s Due Process Challenge

S.C. is a teenage girl who attends school in the Defendant-Appellee Lincoln County School District. S.C. has a severe form of Prader-Willi Syndrome ("PWS"), a genetic condition that disrupts the body's appetite control and causes anxiety, major depressive disorder, and developmental delays. Because of PWS, S.C. experiences intense food-seeking thoughts that lead to poor impulse control and behavioral issues, including verbal and physical aggression. Because consistent and rigid routines concerning food help control PWS, treatment for PWS typically includes total food security ("TFS"), a system in which food is present at mealtimes but otherwise kept locked up and out of sight.

S.C. has been receiving special education services in the school district since the 2015–2016 school year through the provision of regularly updated IEPs. In May 2020, S.C.'s mother, K.G., filed an administrative challenge claiming that the school district was not providing a FAPE to S.C. While this challenge was pending, the school district finalized a new IEP for S.C. on September 18, 2020, approved by the IEP "team" but not by S.C. or K.G. However, because the ALJ's due process review is limited by law to the two years preceding the filing of the due process complaint, the ALJ's review authority did not extend past May 21, 2020. 20

U.S.C. § 1415(f)(3)(c). As a result, and as the ALJ stated in her decision, the ALJ's ruling did not cover the September 2020 IEP.

In October 2020, the ALJ conducted a remote hearing, spanning over fifty hours in total, on K.G.'s due process complaint. On December 22, 2020, the ALJ issued a seventy-page decision, finding that the school district had not provided S.C. a FAPE during the period under review (May 21, 2018 to May 21, 2020). In so finding, the ALJ concluded, among other things, that S.C. required TFS in a school-wide environment to obtain a meaningful educational benefit at school, and that the previous IEPs only provided S.C. with TFS by placing her in a "Structured Learning Center" removed from the regular school environment.

As a remedy for the school district's failure to provide a FAPE, the ALJ ordered that S.C. be placed at the Latham Center, a residential facility that treats students with PWS and provides TFS in the overall school environment. The key provision of the ALJ order reads as follows:

> "The [School] District is to pay the cost of enrolling the Student at the Latham Center, including non-medical care, room and board, *for the period commencing on the first day of the winter 2021 semester* until the District provides TFS in school-wide setting along with an IEP which addresses all of the inadequacies identified in this order or the next annual IEP which appears to be September 2021" (emphasis added).

The school district did not appeal; but neither did it comply with the order. Specifically, it failed to arrange for S.C. to be enrolled at the Latham Center at the school

district's expense. Accordingly, K.G., on behalf of S.C., filed suit in federal court on January 6, 2021, seeking a stay put order or preliminary injunction requiring the school district to comply with the ALJ order and pay for S.C.'s placement at the Latham Center.

## III.      The District Court's Denial of a Stay Put Order

On March 22, 2021, the district court issued an opinion denying a stay put order or preliminary injunction on the grounds that K.G. needed to challenge the September 2020 IEP in further administrative proceedings. The district court did not analyze how the ALJ order impacted stay put, but instead focused on whether the September 2020 IEP addressed the deficiencies described in the ALJ's decision, on who should so decide, and on what should happen until such a decision was made. The district court found that because the ALJ did not rule on whether the September 2020 IEP would or would not actually address the deficiencies the ALJ identified in the earlier IEPs, this question "must be answered at the administrative level, and not on an expedited basis during an emergency motion for a stay put order before this Court." In other words, the district court incorrectly read the issue as S.C. rushing to court before exhausting administrative challenges to the September 2020 IEP, rather than analyzing what was an emergency motion before the court for a stay put order to enforce a favorable ALJ ruling that required S.C.'s placement at the Latham Center pending further administrative or judicial proceedings. K.G. timely appealed.

## STANDARD OF REVIEW

We review a denial of a preliminary injunction for abuse of discretion. *N.D. v. Haw. State Dep't of Educ.*, 600 F.3d 1104, 1111 (9th Cir. 2010) (citing *Earth Island Inst. v. U.S.*

*Forest Serv.*, 351 F.3d 1291, 1298 (9th Cir. 2003)). This includes a stay put order in IDEA proceedings. *See N.E. v. Seattle Sch. Dist.*, 842 F.3d 1093, 1095–96 (9th Cir. 2016). "The district court's interpretation of the underlying legal principles, however, is subject to de novo review and a district court abuses its discretion when it makes an error of law." *E. E. v. Norris Sch. Dist.*, 4 F.4th 866, 871 (9th Cir. 2021) (citing *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003) (en banc)).

## ANALYSIS

As a threshold matter, we find that a "party aggrieved" under 20 U.S.C. § 1415(i)(2)(A) includes a parent, like K.G. here, who is aggrieved by a school district's failure to either appeal or comply with a final administrative order and who seeks court enforcement of that final administrative order. *See Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 115–16 (1st Cir. 2003) (concluding "that Congress could not have intended to leave plaintiffs without an IDEA statutory remedy when they succeed before the hearing officer and the school system does not appeal the administrative decision but simply fails to fulfill a continuing obligation to provide services").[1]

The district court in this case made two errors of law: first, it incorrectly interpreted the ALJ order as providing two alternative simultaneous remedies, rather than an immediate transfer to the Latham Center to be followed only

---

[1] In their briefs, the parties question whether 42 U.S.C. § 1983 is available to enforce an ALJ's administrative order providing relief under the IDEA. Because we grant the relief sought under the IDEA, there is no need to address whether 42 U.S.C. § 1983 may be available in some future case where it is necessary to provide a remedy.

later by another alternative; and second, it did not engage in an analysis of stay put and how the ALJ order changed S.C.'s educational placement.

## I.  The Proper Interpretation of the ALJ Order

As noted, the ALJ order reads as follows: "The [School] District is to pay the cost of enrolling the Student at the Latham Center, including non-medical care, room and board, for the period commencing on the first day of the winter 2021 semester *until* the District provides TFS in school-wide setting along with an IEP which addresses all of the inadequacies identified in this order or the next annual IEP which appears to be September 2021" (emphasis added). For at least four separate reasons, the ALJ order is properly interpreted as providing a two-phase remedy, with the first phase being S.C.'s immediate transfer to the Latham Center on the first day of the winter 2021 semester, where S.C. is to remain, at the school district's expense, until the ALJ determines that a new IEP addresses all the perceived inadequacies in S.C.'s prior setting.

First, the plain language of the order—requiring placement at the Latham Center "until" the school district provides TFS schoolwide and an appropriate IEP—indicates a two-phased remedy, rather than two alternative remedies. By using the word "until," as well as contemplating that there would be no further IEP until September *2021* (although the school district wound up promulgating a new IEP in September *2020*), the order clearly mandated S.C.'s immediate transfer to the Latham Center at the school district's expense. Conversely, the order nowhere provided that the transfer could be delayed by the school district's expedient of issuing (prematurely) a new IEP, whose adequacy had yet to be addressed by the ALJ (or anyone else).

Second, interpreting the order as somehow providing simultaneous alternative remedies is totally inconsistent with the preceding sixty-nine pages of the ALJ decision, which explain why immediate placement at the Latham Center is the appropriate step. K.G. had requested either placement at the Latham Center or remedies related to the school district's providing TFS and adequate IEPs. The ALJ ordered only placement at the Latham Center and found it "unnecessary" to address the remedies related to TFS and IEPs in the school district "[b]ecause this order provides for the residential placement requested . . . ." This further indicates that this was not an alternative or conditional remedy.

Third, the school district's argument below and on appeal—that the school district could unilaterally nullify the first part of the ALJ order by developing the September 2020 IEP—is illogical and contrary to the IDEA's procedural safeguards. Such an interpretation would effectively delegate the ALJ's authority to the IEP team, undermining the procedural safeguards outlined in the IDEA for due process challenges and administrative review. As the Circuits that have considered the issue have held, delegating that determination to the IEP team does not comply with the IDEA's statutory scheme. *M.S. v. Utah Sch. for the Deaf & Blind*, 822 F.3d 1128, 1135 (10th Cir. 2016); *Bd. of Educ. of Fayette Cnty. v. L.M.*, 478 F.3d 307, 317–18 (6th Cir. 2007); *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 521, 526–27 (D.C. Cir. 2005). We agree.

Fourth and finally, considering the ALJ order conditional would require K.G. to file a new due process challenge to the September 2020 IEP to receive the benefit from the favorable ruling in her previous due process challenge, even though the September 2020 IEP was

necessarily outside the two-year scope of the initial due process review, 20 U.S.C. § 1415(f)(3)(C). This would create an impossible scenario for a parent, one that is inconsistent with the IDEA's statutory scheme providing specific procedural safeguards. Such an interpretation would trap parents in a never-ending cycle of due process challenges, forcing them to file a new challenge each time a new IEP is developed, without ever enjoying the benefit of a favorable administrative ruling on a previous due process challenge.

For the aforementioned reasons, the ALJ order here is properly interpreted as laying out a two-part phased remedy, and the district court erred in considering the order as providing for simultaneous alternative remedies, as well as in requiring K.G. to file a new administrative challenge to the September 2020 IEP.

## II. Stay Put Requires S.C.'s Placement at Latham at LCSD's Expense

The district court also erred in failing to analyze stay put and how the ALJ order changed S.C.'s educational placement. As set out in the Department of Education's implementing regulations, "[i]f the hearing officer in a due process hearing . . . agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State and the parents for purposes of [stay put]." 34 C.F.R. § 300.518(d). Furthermore, as this Court discussed in *L.M. v. Capistrano Unified School District*, "[w]here the agency or the court has ruled on the appropriateness of the educational placement in the parents' favor, the school district is responsible for appropriate private education costs . . . ." 556 F.3d 900, 912

(9th Cir. 2009) (discussing other Circuits' cases holding the same).[2]

The stay put order analysis in this case is thus quite straightforward. The district court simply failed to ask how the ALJ order changed S.C.'s educational placement. The final and unappealed ALJ order, which required the school district to pay for S.C. to be placed at the Latham Center on the first day of the winter semester 2021, constituted an agreement between the state and S.C.'s parent for purposes of the stay put provision. As such, S.C.'s legal placement changed to the Latham Center, either when the ALJ order issued on December 22, 2020, or, at worst, on the first day of the winter semester 2021. Because the stay put order functions as an automatic injunction, consideration of irreparable harm or other traditional preliminary injunction factors is not necessary.

## CONCLUSION

As described above, the ALJ order changed S.C.'s educational placement to the Latham Center. This Court thus reverses and remands with instructions to enter a stay put order to enforce the ALJ's order requiring S.C.'s placement at the Latham Center, at the school district's expense, "until the [School] District provides TFS in school-wide setting along with an IEP which addresses all of the inadequacies

---

[2] While in *Capistrano* this Court affirmed the district court's denial of a stay put order on the grounds that there had not yet been an administrative or court decision on the actual merits of the child's placement, 556 F.3d at 912–13, its reasoning compels the opposite conclusion under the facts of this case, as S.C. did, in fact, receive a favorable ALJ ruling on her due process challenge.

identified in this order . . . ."[3] To be sure, further proceedings, whether judicial or administrative, may consider whether the school district is providing TFS schoolwide, as well as whether a new IEP (either the September 2020 IEP or a subsequent IEP) provides a FAPE that cures the deficiencies in previous IEPs that the ALJ order identifies. Unless and until, however, the conclusion of such proceedings changes S.C.'s educational placement, she must be placed at the Latham Center and remain there at the school district's expense.

**REVERSED     AND     REMANDED,     WITH INSTRUCTIONS.**

---

[3] However, to the extent that S.C. asks for placement at the Latham Center for one year as compensatory education, such an order is not warranted under the terms of the ALJ order. The ALJ order found that to the extent that K.G. was still requesting compensatory education, K.G. "has not presented sufficient evidence to support the request." S.C. and K.G. cannot argue against the district court's effective rewriting of the ALJ order and then ask this Court to rewrite a different part of that ALJ order to award a new remedy, one that the ALJ explicitly rejected.