**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 25-2788

_____

Y. C. Q., a minor, individually, by and through Educational Decision Maker
Renee Platz;
RENEE PLATZ, Individually,
*Appellants*

v.

CHICHESTER SCHOOL DISTRICT

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 2:25-cv-03574)
District Judge: Honorable Kelley B. Hodge

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a) on January 15, 2026
_____

Before: SHWARTZ, CHUNG, and AMBRO, *Circuit Judges*

(Filed: April 8, 2026)
_____

OPINION[*]
_____

CHUNG, Circuit Judge.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

We address here the narrow issue of whether, when no Individualized Education Program ("IEP") is in place, a Special Education Hearing Officer's order to develop an IEP is an agreement to a new "educational placement" pursuant to the "stay put" provision of the Individuals with Disabilities Education Act ("IDEA"). We conclude that it is not and will affirm the District Court's order.

I.   BACKGROUND[1]

Y.C.Q. attends Chichester High School, which is run by defendant Chichester School District ("Chichester"). Y.C.Q. has been diagnosed with anxiety, depression, and post-traumatic stress, and scored within the "poor range" on the Comprehensive Test of Nonverbal Intelligence. JA71-73. Renee Platz was appointed by the Family Court of Philadelphia to serve as Y.C.Q.'s Education Decision Maker ("EDM").[2]

Chichester placed Y.C.Q. in an English Language Development ("ELD") class, with the majority of her courses being taught in English. **JA65-66.** She was in a general education setting and did not receive special education. **JA83.** Y.C.Q. struggled to perform academically. **JA68.** As a result, Platz requested that Chichester perform an

---

[1]     Because we write for the parties, we recite only the facts pertinent to our decision. The Background is largely derived from the findings of fact as outlined in the Hearing Officer's April 14, 2025 Decision (the "Decision"), which are not challenged by the parties.

[2]     An EDM, pursuant to Pa.R.J.C.P. 1145, is vested with authority to make all decisions regarding a child's education. See Pa.R.J.C.P 1145; see also In re J.J., 69 A.3d 724, 733 (Pa. Super. 2013). Neither party argues that the EDM does not serve as a "parent" for purposes of the IDEA. 34 C.F.R. § 300.519(g)(1)-(2); 34 C.F.R. § 300.30(a)(5).

Independent Educational Evaluation of Y.C.Q. Chichester instead filed a due process complaint with the Pennsylvania Office of Dispute Resolution on April 30, 2024. Platz answered Chichester's due process complaint and filed counterclaims, alleging that, among other things, Chichester denied Y.C.Q.'s right to a free appropriate public education ("FAPE") in violation of the IDEA.

A hearing on Platz's counterclaims was conducted by Hearing Officer Cathy A. Skidmore ("Hearing Officer") across five days in early 2025. On April 14, 2025, the Hearing Officer concluded that Y.C.Q. was "eligib[le] for special education under the IDEA based on Emotional Disturbance," but not for a "specific learning disability in mathematics calculation." JA82. With regard to math, the Hearing Officer found Y.C.Q. eligible for special education based on her "anxiety as a result of a lack of basic [mathematical] academic skills," which the Hearing Officer found to bear a "relationship to … [Y.C.Q.'s] emotional disturbance." JA82. The Hearing Officer thus found that Chichester deprived Y.C.Q. of a FAPE, and ordered Chichester to "convene a meeting of an IEP team for purposes of recognizing [Y.C.Q.]'s emotional disturbance disability and developing a program to address all of [Y.C.Q.'s] needs." JA89. As to specifics, the Hearing Officer only stated that the IEP should include counseling, "direct instruction on coping, self-advocacy, and other self-regulation skills" ("skills training"), and mathematics instruction. JA90. While finding that Y.C.Q. needed special education services, the Hearing Officer left open whether such services should take place in a separate classroom or school. In addition, the Hearing Officer "awarded compensatory education in the amount of one hour for each [day] that school was in session in the

3

District beginning on March 3, 2025 until such time as an IEP is developed and approved for immediate implementation." JA89.

On April 22, 2025, Y.C.Q. and Platz ("Plaintiffs") wrote to Chichester to initiate the development of an IEP. Chichester responded that it intended to appeal the Decision. Plaintiffs then filed a complaint in the District Court alleging that Chichester committed violations of the IDEA, Section 504 of the Rehabilitation Act, the Equal Educational Opportunities Act, and Title VI of the Civil Rights Act of 1964. Thereafter, Plaintiffs filed an unsuccessful Emergency Motion for Automatic Injunctive Relief pursuant to the IDEA's "stay-put" provision, 20 U.S.C. § 1415(j). Plaintiffs timely appealed the District Court's denial of injunctive relief.

II.     DISCUSSION[3]

The IDEA's "stay-put provision was intended to serve as a type of 'automatic preliminary injunction.'" Michael C. ex rel. Stephen C. v. Radnor Twp. Sch. Dist., 202 F.3d 642, 650 (3d Cir. 2000). The stay-put provision requires that "during the pendency of any proceedings conducted pursuant to this section, … [a] child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j). The stay-put provision's purpose is to maintain the status quo during the pendency of IDEA proceedings. J.O. ex rel. C.O. v. Orange Twp. Bd. of Educ., 287 F.3d 267, 272 (3d Cir. 2002).

---

[3]     The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 18 U.S.C. § 1292(a)(1). We "review[] the application of the 'stay-put' rule to a given set of facts de novo." D.M. v. New Jersey Dep't of Educ., 801 F.3d 205, 211 (3d Cir. 2015).

4

We have interpreted a "current educational placement" to be the "operative placement actually functioning at the time the [IDEA] dispute arose." Drinker by Drinker v. Colonial Sch. Dist., 78 F.3d 859, 867 (3d Cir. 1996). It is the "IEP-specified educational setting."[4] M.R. v. Ridley Sch. Dist., 744 F.3d 112, 118 (3d Cir. 2014). An educational placement may be in general or special education. See Drinker, 78 F.3d at 867. A special educational placement may be a setting such as "a public school or a private school that the local district was financing to satisfy the requirement that every child be given a free, appropriate education." Ridley, 744 F.3d at 118 (emphasis omitted).

"The new placement can become the educational setting protected by the stay-put rule if 'the parents and the State or local educational agency agree to the change.'" Ridley, 744 F.3d at 118-19 (quoting 20 U.S.C. § 1415(j)). When parents receive a

---

[4] Although our sister circuits have offered varying definitions of "educational placement," they have consistently read it to refer to a child's educational setting as a whole. See, e.g., Ventura de Paulino v. New York City Dep't of Educ., 959 F.3d 519, 526 (2d Cir. 2020) (educational placement refers to "i.e., the classes, individualized attention and additional services a child will receive") (internal citations and quotations omitted); AW ex rel. Wilson v. Fairfax Cnty. Sch. Bd., 372 F.3d 674, 683 (4th Cir. 2004) (educational placement "fixes the overall instructional setting in which the student receives his education"); White ex rel. White v. Ascension Par. Sch. Bd., 343 F.3d 373, 379 (5th Cir. 2003) (educational placement "as used in the IDEA, means educational program"); Tilton by Richards v. Jefferson Cnty. Bd. of Educ., 705 F.2d 800, 803 (6th Cir. 1983) (educational placement "embodies both academic instruction and a broad range of associated services"); Bd. of Educ. of Cmty. High Sch. Dist. No. 218, Cook Cnty., Ill. v. Illinois State Bd. of Educ., 103 F.3d 545, 549 (7th Cir. 1996) (educational placement "means something more than the actual school attended by the child and something less than the child's ultimate goals"); N.D. ex rel. parents acting as guardians ad litem v. Hawaii Dep't of Educ., 600 F.3d 1104, 1116 (9th Cir. 2010) (educational placement is "the general educational program of the student").

5

favorable administrative decision during the pendency of IDEA proceedings, the favorable decision is an agreement between the State and parents under 20 U.S.C. § 1415(j). Ridley, 744 F.3d at 118-19.

Plaintiffs argue that the Decision represents an agreement between Plaintiffs and the State to change Y.C.Q.'s educational placement and that its order to develop and implement an IEP is Y.C.Q.'s enforceable "current educational placement" under the stay-put provision. 20 U.S.C. § 1415(j). Therefore, Plaintiffs contend Chichester violated the stay-put provision by refusing to develop and implement an IEP for Y.C.Q while this case proceeds. For the reasons that follow, we disagree and conclude that the District Court did not err in denying Plaintiffs' motion for stay-put relief.

In considering Y.C.Q.'s "current educational placement" following the Decision, we begin with the "operative placement actually functioning at the time the [IDEA] dispute arose." Drinker, 78 F.3d at 867. When the dispute arose, there was no IEP in place, so Y.C.Q.'s current educational placement was the regular classroom setting, enrollment in an ELD course, and occasional support from an ELD instructor in the rest of her classes.

We next contemplate whether the Decision was an agreement between the State and Plaintiffs. We have stated that "a decision favorable to the parents during the administrative review process 'must be treated as an agreement between the State and parents.'" Ridley, 744 F.3d at 119. Accordingly, the Decision is such an agreement because it awarded the relief Plaintiffs sought.

Plaintiffs argue that the Decision was an agreement to change Y.C.Q.'s current

6

educational placement. A current educational placement is "the IEP-specified educational setting," such as general or special education, and "public school or a private school[.]" Id., 744 F.3d at 118 (emphasis omitted). The Decision did not specify a change to private school enrollment, so we consider whether the Decision was an agreement to a special educational environment or other new educational setting as set forth in an IEP. The Decision called for three services - counseling, skills training, and mathematics instruction. This directive is insufficient to establish an IEP-specified educational setting, see, e.g., 20 U.S.C. § 1414(d)(1)(A)(i)(I) – (VII) (setting forth comprehensive requirements for IEP),[5] and thus is not an agreement to an educational placement.

Plaintiffs nonetheless argue that the mandate to develop an IEP is itself Y.C.Q.'s "current educational placement" per the stay-put provision. But an unformed IEP, lacking in almost every feature required, and lacking in detail sufficient to set forth an overall educational environment, is not yet a "placement" at all and is easily distinguished from those concrete, established settings that we and other courts have deemed to be agreed-upon changes to "current educational placements." This holds true for the out-of-circuit, non-binding cases relied upon by Plaintiffs: most involve immediately-implementable changes to already-existing IEPs, and all involve students

---

[5] For instance, the IDEA requires, among other things, that an IEP set forth: a "child's present levels of academic achievement and functional performance," "measurable annual goals," "how the child's progress … will be measured[,]" "the special education and related services" to be provided, and "the anticipated frequency, location, and duration of those services[.]" 20 U.S.C. § 1414(d)(1)(A)(i)(I) – (VII).

7

with pre-existing educational placements in the form of specialized school settings, IEPs, or both.[6] In those few instances where schools were ordered to develop newly-ordered remedies as stay-put relief, that relief involved discrete modifications to an existing, complete IEP or educational plan, not the wholesale development of a new one. See Escambia Cnty. Bd. of Educ. v. Benton, 358 F. Supp. 2d 1112, 1114 (S.D. Ala. 2005) (child already had an IEP in place at the time administrative decision ordered behavior assessment and behavioral intervention changes).

The case Plaintiffs cite to involving relief most analogous to that sought here is Williamson Cnty. Bd. of Educ. v. C.K., an unpublished district court case from the Middle District of Tennessee. 2007 WL 3023616 (M.D. Tenn. Oct. 11, 2007). In Williamson, the court found that the stay-put provision required implementation of a favorable administrative decision ordering multiple discrete actions such as expunging the child's disciplinary record, as well as implementation of an IEP within sixty days. Id. at *3. Even there, however, the student had an existing Section 504 of the Rehabilitation

---

[6] See, e.g., Hatikvah Int'l Acad. Charter Sch. v. E. Brunswick Twp. Bd. of Educ., 10 F.4th 215, 220 (3d Cir. 2021) (new IEP directed that child's stay-put placement was private school); Susquenita Sch. Dist. v. Raelee S. By & Through Heidi S., 96 F.3d 78, 84 (3d Cir. 1996) (changing child's educational placement to private school focused on children with learning disabilities); S.C. by K.G. v. Lincoln Cnty. Sch. Dist., 16 F.4th 587, 593 (9th Cir. 2021) (same); Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz, 290 F.3d 476, 484 (2d Cir. 2002) (upon finding then-current IEP to be inadequate, child's educational placement was changed to specialized private school); Vilonia Sch. Dist. v. M.S., 2018 WL 8733058, *6 (E.D. Ark. May 14, 2018) (child's stay-put placement was most recent IEP); Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass., 471 U.S. 359, 362-63, 373-74 (1985) (change from public school to private school); Mt. Vernon Sch. Corp v. A.M. ex rel. his parents, 2011 WL 2020668, *3 (S.D. Ind. May 24, 2011) (placement in a residential facility).

8

Act education plan, and the court was careful to distinguish the stay-put relief from an order to merely "complete an IEP[.]" Id. at *7. But that is what Plaintiffs seek here, as they do not limit their argument to the three specific IEP services ordered by the Hearing Officer. So, Williamson does not support awarding the relief sought here.[7]

In light of the above, we decline to adopt the Plaintiffs' position, as doing so would be a sharp departure from precedent. Relying on that precedent, we conclude the Decision does not constitute an agreement to a change in current educational placement, as it does not place Y.C.Q. in a new educational setting. The stay-put provision therefore affords Plaintiffs no relief. Accordingly, we will affirm the District Court's denial of Plaintiffs' motion for automatic injunctive relief.

III.     CONCLUSION

For the reasons presented above, we affirm.

---

[7]     We do not address whether, had they done so, those cases would support such relief.